1
2
3
4

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| STEVEN FLORES, | ) | 1:05-cv-0379-TAG HC |
| | ) | |
| | ) | ORDER DENYING AMENDED PETITION |
| Petitioner, | ) | FOR WRIT OF HABEAS CORPUS (Doc. 12) |
| | ) | |
| | ) | ORDER DIRECTING CLERK OF COURT |
| vs. | ) | TO ENTER JUDGMENT IN FAVOR OF |
| | ) | RESPONDENT |
| | ) | |
| SCOTT KERNAN, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |
| | ) | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### PROCEDURAL HISTORY

Petitioner is in custody of the California Department of Corrections and Rehabilitation as a result of convictions in the Superior Court of California, County of Kings (the "Superior Court") for intentionally throwing bodily fluids upon a prison employee ("gassing")(Cal. Pen. Code § 4501.1),  and battery upon that same prison employee as well as another prison employee.  (Cal. Pen. Code § 4501.5).  (Lodged Document ("LD") 4, pp. 2-3).    After admitting two prior "strike" convictions under California's Three Strikes Law, Petitioner was sentenced to two consecutive indeterminate term of 25-year-to-life, resulting in a total sentence of 50-years-to-life.  (Id. at p. 3).

Petitioner filed a direct appeal in the California Court of Appeals, Fifth Appellate District (the "5th DCA"). (LD 1).   On April 7, 2003, the 5th DCA reversed Petitioner's conviction for

1   battery against the prison employee whom he gassed, holding that battery was a lesser included

2   offense of gassing. (LD 4, p. 11). The 5th DCA affirmed the remaining counts of conviction and

3   the sentence. (Id. at p. 21). Petitioner timely filed a petition for review in the California

4   Supreme Court, which was denied on June 18, 2003. (LD 5).

5        On March 11, 2004, Petitioner filed a state court petition in the California Supreme Court

6   raising the claims in the amended petition. (LD 11). The California Supreme Court denied the

7   petition on January 15, 2005. (LD 12). On December 1, 2006, Petitioner filed a petition for writ

8   of habeas corpus in the Kings County Superior Court challenging the trial court's restitution

9   order. (LD 7). The petition was denied on December 14, 2006. (LD 8). On February 16, 2007,

10  Petitioner filed a state habeas petition in the 5th DCA raising the same issue; the 5th DCA denied

11  the petition on March 15, 2007. (LD 9 & 10).

12       On March 9, 2005, Petitioner filed the original petition in this Court's Sacramento

13  Division. (Doc. 1). On March 22, 2005, the matter was transferred to the Fresno Division.

14  (Doc. 5). On September 15, 2005, Petitioner filed an amended petition. (Doc. 12). On June 11,

15  2007, Respondent filed a response to the petition. (Doc. 17). On August 13, 2007, Petitioner

16  filed a Traverse. (Doc. 27).

17       Respondent concedes that the issues raised in the amended petition have been fully

18  exhausted. (Doc. 17, p. 3).

19                          **FACTUAL BACKGROUND**

20       The Court adopts the Factual Summary contained in the 5th DCA's unpublished opinion:

21  On October 5, 2000, Flores was an inmate at Corcoran State prison. He was housed in
    the acute care hospital portion of the prison. He was the sole occupant of his cell. Dean
22  Bowen was a registered nurse who was employed by the prison to staff its hospital
    facility.
23
24  On the morning of October 5, Bowen was making his rounds of the inmates housed in
    that particular section of the hospital. He saw Flores motion to him through a narrow
25  rectangular window in the cell door to approach the cell. When Bowen approached the
    cell, Flores began speaking in a soft voice with a thick Spanish accent. Bowen put his
26  head up to a crack in the door in order to hear what Flores was saying. As he did so,
    Flores brought a cup from behind his back and threw its contents through the crack in the
27  door. Bowen's face, including his mouth and eyes, was covered with the liquid in the
    cup.

28  ///

                                         2

Bowen testified the cup contained urine.  He based this conclusion on the distinctive smell of the liquid and on his experience as a nurse in dealing with urine.  Bowen also testified that his eyes showed symptoms of serious infection the following day.  After being qualified as an expert witness, he stated that the infection was a result of having been splashed in the eyes with the urine.  This incident was the basis of the charges alleged in counts I and II.

Flores was pepper sprayed, removed from his cell and handcuffed.  After being handcuffed, Flores was taken to the shower for decontamination.  Karen Currie, a prison correctional officer, was standing in a hallway between the shower area and Flores's cell.  As Flores was being escorted back to his cell after showering, he called Currie a "bitch" and he kicked at her with his left leg and struck Currie on the right thigh.  No injury resulted from the kick.  This incident was the basis of the charge in count III.

(LD 4, pp. 3-4).

## DISCUSSION

### I. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7, 120 S.Ct. 1495 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Kings County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).  Accordingly, the Court has jurisdiction over this action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), overruled on other grounds by Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment).  The original petition was filed on March 9, 2005, after the enactment of the AEDPA, and thus it is governed by the AEDPA.

### II. Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the adjudication of a prisoner's claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) resulted in a decision that "was based on an unreasonable

1  determination of the facts in light of the evidence presented in the State court proceeding."

2  28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71, 123 S.Ct. 1166 (2003);

3  Williams v. Taylor, 529 U.S. at 412-413.

4       The first prong of federal habeas review involves the "contrary to" and "unreasonable

5  application" clauses of 28 U.S.C. § 2254(d)(1). This prong pertains to questions of law and

6  mixed questions of law and fact. Williams v. Taylor, 529 U.S. at 407-410; Davis v. Woodford,

7  384 F.3d 628, 637 (9th Cir. 2004). A state court decision is "contrary to" clearly established

8  federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme

9  Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a

10  [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141,

11  125 S.Ct. 1432 (2005)(citing Williams v. Taylor, 529 U.S. at 405). A state court decision

12  involves an "unreasonable application" of clearly established federal law "if the state court

13  applies [the Supreme Court's precedents] to the facts in an objectively unreasonable manner."

14  Brown v. Payton, 544 U.S. at 141. Consequently, a federal court may not grant habeas relief

15  simply because the state court's decision is incorrect or erroneous; the state court's decision must

16  also be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 511, 123 S.Ct. 2527 (2003),

17  (citing Williams v. Taylor, 529 U.S. at 409). Section 2254(d)(1)'s reference to "clearly

18  established Federal law" refers to "the holdings, as opposed to the dicta, of [the Supreme]

19  Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529

20  U.S. at 412; Lockyer v. Andrade, 538 U.S. at 412; Barker v. Fleming, 423 F. 3d 1085, 1093

21  (9th Cir. 2005).

22       The second prong of federal habeas review involves the "unreasonable determination"

23  clause of 28 U.S.C. § 2254(d)(2). This prong pertains to state court decisions based on factual

24  findings. Davis v. Woodford, 384 F.3d at 637(citing Miller-El v. Cockrell, 537 U.S. 322, 123

25  S.Ct. 1029 (2003). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's

26  adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable

27  determination of the facts in light of the evidence presented in the State court proceeding."

28  Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500 (when reviewing a state

1  court's factual determinations, a "responsible, thoughtful answer reached after a full opportunity

2  to litigate is adequate to support the judgment"). A state court's factual finding is unreasonable

3  when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id. ; see

4  Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert. denied, Maddox v. Taylor, 543

5  U.S. 1038, 125 S.Ct. 809 (2004). The AEDPA also requires that considerable deference be given

6  to a state court's factual findings. A state court's factual findings are presumed to be correct, and

7  may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

8      To determine whether habeas relief is available under § 2254(d), the federal court looks

9  to the last reasoned state court decision as the basis of the state court's decision. Robinson v.

10  Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state court decided the petitioner's

11  claims on the merits but provided no reasoning for its decision, the federal habeas court must

12  independently review the record to determine whether habeas corpus relief is available under

13  § 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d

14  976, 981-982 (9th Cir. 2000). Where the state court denied the petitioner's claims on procedural

15  grounds or did not decide them on the merits, the deferential standard of the AEDPA do not

16  apply and the federal court must review the petitioner's 's claims de novo. Pirtle v. Morgan, 313

17  F.3d 1160, 1167 (9th Cir. 2002).

18      **III.  Review of Petitioner's Claims.**

19      The petition alleges the following grounds for relief:

20  **Ground One**          **Whether the conviction on count II must be reversed because
                            battery is a lesser included offense of gassing.**
21

22  **Ground Two**          **Whether the state court's failure to instruct on the lesser
                            included offense of simple assault and battery requires reversal
                            on count I.**
23

24  **Ground Three**        **Whether the trial court's refusal to strike the charged prior
                            convictions and its misapplication of the sentencing law
                            violated Petitioner's due process rights.**
25

26  **Ground Four**         **Whether, in the absence of proof of aggravating circumstances,
                            gassing and battery are convictions that can support a "Three
                            Strikes" sentence under the Eighth Amendment's prohibition
27                          against cruel and unusual punishment.**

28  **Ground Five**         **Whether Petitioner was deprived of his right to the effective
                            assistance of appellate counsel.**

5

**Ground One**          **Whether the conviction on count II must be reversed because battery is a lesser included offense of gassing.**

Petitioner initially contends that the judgment of conviction as to count II must be reversed because battery is a lesser included offense of gassing.  (Doc. 12, p. 5).  In the answer, Respondent contends that the issue is moot because the 5th DCA reversed Petitioner's conviction as to count II on this very basis.  (Doc. 17, p. 7).  In his traverse, Petitioner concedes that the issue is now moot based on the 5th DCA's reversal of his conviction for count II.  (Doc. 27, p. 5). The Court agrees that the issue is moot.

First, no case or controversy exists regarding this claim.  The case or controversy requirement of Article III of the Federal Constitution deprives the Court of jurisdiction to hear moot cases.  Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 70, 104 S.Ct. 373 (1983); N.A.A.C.P., Western Region v. City of Richmond, 743 F.2d 1346, 1352 (9th Cir. 1984).  A case becomes moot if the "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  Murphy v. Hunt, 455 U.S. 478, 481, 102 S.Ct. 1181 (1984). The federal Court is "without power to decide questions that cannot affect the rights of the litigants before them."  North Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402 (1971) per curiam (quoting Aetna Life Ins. Co. v. Hayworth, 300 U.S. 227, 240-241, 57 S.Ct. 461 (1937)). To satisfy the Article III case or controversy requirement, a litigant "must have suffered some actual injury that can be redressed by a favorable judicial decision."  Iron Arrow, 464 U.S. at 70; Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 38, 96 S.Ct. 1917 (1976); N.A.A.C.P., Western Region, 743 F.2d at 1353.  Because the 5th DCA has already afforded Petitioner judicial relief, there is no case or controversy regarding this issue.

Moreover, even were the issue not moot for the reason set forth above, the Court lacks habeas jurisdiction over count II because Petitioner is not currently "in custody" for a conviction as to that count.  The Court may entertain a petition for writ of habeas corpus on behalf of a petitioner who is in state custody on the ground that the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Because the conviction and sentence for count II was reversed, Petitioner is currently "in custody" only for

convictions on counts I and III, not for count II.  Accordingly, habeas jurisdiction does not extend to count II.  For these reasons, Ground One must be denied.

**Ground Two**          **Whether the state court's failure to instruct on the lesser included offense of simple assault and battery requires reversal on count I.**

Petitioner next contends that the trial court deprived him of a fair trial by failing to instruct the jury on the lesser included offense of simple assault and battery as to count I. Petitioner's contention is without merit.

Initially, the Court notes that issues relating to state court jury constructions generally do not give rise to cognizable habeas claims.  Petitioner's burden on habeas is to establish that the state court's failure to instruct on circumstantial evidence rose to the level of a federal constitutional error.  Generally, the issue of whether a jury instruction is a violation of state law is neither a federal question nor a proper subject for habeas corpus relief.  Estelle v. McGuire, 502 U.S. 62, 68, 112 S.Ct. 475 (1991). ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'")(quoting Lewis v. Jeffers, 497 U.S. 764, 780, 110 S.Ct. 3092 (1990)); Gilmore v. Taylor, 508 U.S. 333, 348-349, 113 S.Ct. 2112 (1993) (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas").  Thus, normally, a claim that challenges the propriety of a jury instruction under state law cannot reasonably be construed to allege a deprivation of federal rights.  Van Pilon v. Reed, 799 F.2d 1332, 1342 (9th Cir. 1986). Federal courts are bound by state court rulings on questions of state law.  Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.1989).

To obtain federal collateral relief for errors in the jury charge, the petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. Estelle, 502 U.S. at 72.  The constitutional significance of the omission of an instruction will depend upon the evidence in the case and the overall instructions given to the jury.  See Duckett v. Godinez, 67 F.3d 734, 745 (9th Cir. 1995); see also Henderson v. Kibbe, 431 U.S. 145, 155, 97 S.Ct. 1730 (1977).

Additionally, the Court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. United States v. Frady, 456 U.S. 152, 169, 102 S.Ct. 1584 (1982)(citing Henderson v. Kibbe, 431 U.S. at 154). Furthermore, even if it is determined that the instruction violated the petitioner's right to due process, the petitioner can only obtain relief if the unconstitutional instruction had a substantial influence on the conviction and thereby resulted in actual prejudice under Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1720 (1993) (whether the error had a substantial and injurious effect or influence in determining the jury's verdict.). See Hanna v. Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996).

Regarding lesser-included-offense instructions, the United States Supreme Court has held that the failure to instruct on a lesser included offense in a capital case is constitutional error if there was evidence to support the instruction. Beck v. Alabama, 447 U.S. 625, 638, 100 S.Ct. 2382 (1980). In a noncapital case, the failure of a trial court to instruct sua sponte on lesser included offenses does not present a federal constitutional question. Windham v. Merkle, 163 F.3d 1092, 1106 (9th Cir. 1998); Turner v. Marshall, 63 F.3d 807, 813 (9th Cir.1995), overruled on other grounds by Tolbert v Page, 182 F.3d 677 (9th Cir.1999) (en banc)(finding the application of Beck to noncapital cases barred by Teague v. Lane, 498 U.S. 288, 299-300, 111 S.Ct. (1989)); James v. Reese, 546 F.2d 325, 327 (9th Cir.1976) (per curiam).

However, a defendant may suffer a due process violation if the court's failure to give a requested instruction prevents a defendant from presenting his theory of the case. Bashor v. Risley, 730 F.2d 1228, 1240 (9th Cir. 1984); see also United States v. Mason, 902 F.2d 1434, 1438 (9th Cir.1990) ("A defendant is entitled to have the judge instruct the jury on his theory of defense, provided that it is supported by law and has some foundation in the evidence.").

In Bashor, the Ninth Circuit recognized that a court's failure to give a lesser included instruction did not present a federal constitutional claim. Bashor, 730 F.2d at 1239. Nevertheless, the Court found "no fundamental unfairness in the trial court's failure to instruct on a lesser included offense" to a homicide charge as counsel did not request the lesser included offense instruction and the defense strategy was based "on the theory that Bashor was either guilty or not guilty of deliberate homicide." Id.

1    Here, defense counsel did not request the instruction and instead apparently pursued a

2    defense theory that the liquid Petitioner threw at the victim's face was not urine.  Therefore, the

3    trial court's failure to sua sponte give the lesser-included offense instruction does not present a

4    federal question.  Windham, 163 F.3d at 1106; Turner, 63 F.3d at 813.

5    Moreover, even if Ground Two properly raised a federal question, it fails on the merits.

6    Under California law, "a lesser offense is necessarily included in a greater offense if either the

7    statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading,

8    include all the elements of the lesser offense, such that the greater cannot be committed without

9    also committing the lesser." People v. Sanchez, 24 Cal.4th 983, 988 (2001)(quoting People v.

10   Breverman, 19 Cal.4th 142, 154, n. 5 (1998)).   The determination of whether one offense is a

11   lesser included offense of another must be based on the statutory definitions of the two offenses

12   and the language of the accusatory pleading. People v. Ortega, 19 Cal.4th 686, 698 (1998),

13   overruled on other grounds by People v. Reed, 38 Cal, 4th 1224 (2006).  A trial court must

14   instruct, sua sponte, on a lesser included offense when "the evidence raises a question as to

15   whether all of the elements of the charged offense were present [citation], but not when there is

16   no evidence that the offense was less than that charged." People v. Sedeno, 10 Cal.3d 703, 715

17   (1974), overruled on other grounds by People v. Breverman, 19 Cal.4th 142 (1998).

18   California Penal Code § 4501.1 prescribes the punishment for any "person confined in the

19   state prison who commits a battery by gassing upon the person of any...employee of the state

20   prison is guilty of aggravated battery and shall be punished by imprisonment in a county jail or

21   by imprisonment in the state prison for two, three, or four years." Cal. Pen. Code § 4501.1(a).

22   For purposes of the statute, "gassing" means "intentionally placing or throwing, or causing to be

23   placed or thrown, upon the person of another, any human excrement or other bodily fluids or

24   bodily substances or any mixture containing human excrement or other bodily fluids or bodily

25   substances that results in actual contact with the person's skin or membranes." Cal. Pen. Code

26   § 4501.1(b).

27   In order to prove a charge of aggravated battery by gassing, the prosecution must prove

28   that the defendant (1) was confined in the state prison; (2) intentionally placed or threw, or

9

1  caused to be placed or thrown, upon the person of another, any human excrement or other bodily

2  fluids or bodily substances or any mixture containing human excrement or other bodily fluids or

3  bodily substances that results in actual contact with the other person's skin or membranes; and

4  (3) the victim was either a peace officer or employee of the state prison.  CALJIC 7.37.1.

5          The 5th DCA rejected Petitioner's argument, holding as follows:

> Title 5 of the Penal Code, which deals with offenses by prisoners, contains the crimes of
> which Flores was convicted.  Although the gravamen of the crimes described in sections
> 4501.1 and 4501.5 generically can be described as aggravated battery and battery,
> respectively, what distinguishes these crimes from their more generic counterparts is the
> particular relationship the perpetrators and victims bear to each other.  The perpetrators
> are prisoners and the victims are not prisoners.  The status of the perpetrator and victim
> is, in all but the most unusual of circumstances, fixed by law and not a matter of legal
> contention.  There was no factual basis upon which a jury possibly could have found the
> Flores was not a prisoner or that his two victims were prisoners.

> Section 4501.5 describes the least type of an assault or battery that can be charged where
> the perpetrator is a prisoner and the victim is not.  Where, as here, the relationship of the
> perpetrator and victim is legally determinable as being that of prisoner and nonprisoner,
> respectively, simple battery is not a lesser included offense, it is a completely separate
> crime that has no pertinence to the proceeding.  There is no legal basis upon which
> Flores's jury could have returned a verdict of not guilty as to counts I or III but guilty as
> to a charge of simple assault or battery.  Jury instructions pertaining to those crimes were
> therefore not warranted, and the trial court did not err by failing to instruct so.

(LD 4, pp. 11-12).

        There is little this Court can add to the 5th DCA's cogent analysis.  Under Title 5 of

California's Penal Code, the least offense for which a prisoner assaulting a nonprisoner can be

convicted is that prescribed in § 4501.5.  If, as here, the offense involves the throwing of human

excrement, bodily fluids, or bodily substances that contact the face of the victim, the perpetrator

is guilty of aggravated battery by gassing.  The nature of these offenses, as the 5th DCA noted,

are made distinct by the specific relationship between the perpetrator and victim as that of prison

inmate and employee of a state prison, respectively.  The more generalized offenses of simple

assault and simple battery do not require such a relationship.

        As mentioned, a sua sponte duty to instruct on the lesser included offense arises "if there

is substantial evidence the defendant is guilty only of the lesser."  People v. Birks, 19 Cal.4th

108, 118 (1998).  Here, the 5th DCA correctly concluded that, far from "substantial evidence,"

there was no evidence to support a finding by the jury that Petitioner "was not a prisoner or that

his two victims were prisoners."  Since, logically, those are the only scenarios under which

Petitioner could have been convicted of the lesser included offenses yet acquitted of gassing, the

state court was correct in concluding that, under California law, neither simple assault nor simple

battery can be a lesser included offense of aggravated battery by gassing.

Petitioner has not cited, and the Court is unaware of, any clearly established federal law

to the contrary regarding these specific offenses.  Accordingly, even if the trial court's decision

raised a federal issue, the failure to instruct the jury sua sponte on the charge of simple battery or

assault was not error and the state court's adjudication of this issue was neither contrary to nor an

unreasonable application of clearly established federal law.  Accordingly, Ground Two must be

denied.

**Ground Three**            **Whether the trial court's refusal to strike the charged prior**
                            **convictions and its misapplication of the sentencing law**
                            **violated Petitioner's due process rights.**

Petitioner next contends that the state court miscounted the number of prior "strike"

convictions and, therefore, necessarily violated Petitioner's constitutional rights by sentencing

him under a mistaken view of his prior record.  The Court again disagrees.

In the amended petition, Ground Three contains several different themes: ineffective

assistance of trial counsel, misstatements by the trial court at sentencing, and an erroneous

probation report.  (Doc. 12, p. 5A).  Respondent has construed the claim as one involving the

possible prejudice to Petitioner resulting from the trial court's misstatements about the number of

prior convictions Petitioner had at his sentencing.  (Doc. 17, p. 9).  Significantly, this is the same

argument Petitioner raised in the 5th DCA and the California Supreme Court on direct appeal;

thus, by so construing the issue, Petitioner is being given the full benefit of the doubt regarding

exhaustion of his claim.  Accordingly, the Court will ignore that aspect of Ground Three that

suggests ineffective assistance of trial counsel, since that issue was never presented to the

California Supreme Court, and will instead focus on the gravamen of the claim, which deals with

the trial court's misstatements regarding the number of prior convictions at sentencing.

///

Petitioner was originally charged with three prior "strike" convictions, all of which arose from a 1996 criminal case, Los Angeles County Case No. BA122895.  (Clerk's Transcript ("CT") 79; Reporter's Transcript ("RT") 115).  On February 2, 1996, Petitioner was convicted of two counts of violating California Penal Code § 245(b), assault with a semiautomatic firearm, and one count of Penal Code § 245(a)(2), assault with a firearm.  (Id.).  At trial, Petitioner agreed to waive his rights to a jury trial on the issue of his prior convictions and admit them.  (RT 116; 124).  However, during the advisement, defense counsel pointed out that one of the three charged "strike" convictions, assault with a firearm, had been reversed on appeal.  (Id. at 121).  Defense counsel noted, "I don't think it makes a big difference in the larger scheme of things because there are two other strike priors there, but I do need to run that down to see whether or not we have two or three."  (Id.).  The prosecutor then agreed to strike the one conviction that had been reversed.  (Id. at 122).

Later, at the sentencing hearing, the court indicated it would make a tentative order regarding sentencing and then allow counsel to respond.  (RT, hearing Feb. 22, 2002, p. 3).  The court prefaced its remarks by noting that Petitioner had three prior strike convictions.  (Id.).  The court considered Petitioner's motion to strike one of the prior convictions under People v. Superior Court (Romero), 13 Cal.4th 497 (1996)(state trial courts retain discretion to dismiss prior "strike" convictions in the interest of justice), but denied the motion, noting that "[t]his isn't an appropriate case to do so, in the Court's view.  The interest of justice would not be served, and there are no other circumstances that would warrant the disregarding or striking of these strike prior allegations."  (Id. at p. 4).

Defense counsel then argued for striking one of the strikes, noting that Petitioner had three prior strike convictions.  (Id. at p. 5).  Counsel argued, however, that since all three convictions arose out of one incident, the court should take that into consideration and treat the separate strikes "as one incident, and one strike, and sentence, accordingly."  (Id.).  The prosecutor then also referred to the total number of prior strike convictions as "three," rather than two.  (Id. at p. 6).  The court denied the motion to strike one of the prior convictions.  (Id.).

///

As a preliminary matter, the Court cannot consider in a vacuum the purported error, i.e., the trial court's statement that Petitioner had three prior "strike" convictions; rather, the Court must view the error within the context where it occurred, i.e., a sentencing hearing at which the trial court considered and denied a defense motion to dismiss one or more prior strike convictions. The misstatement by the trial court can only be prejudicial to Petitioner if the trial court had discretion regarding the sentence imposed and the error resulted in the trial court's exercise of that discretion in a manner that resulted in a stiffer sentence than it might otherwise have imposed. The Petitioner having already admitted two prior convictions that "triggered" the three strikes provisions, the only latitude in sentencing the trial court would have had would have been to grant Petitioner's <u>Romero</u> motion to dismiss on or more of the prior strikes, thus removing the "triggering" predicate convictions that mandate the longer three strikes sentence.

The purpose of California's three strikes law is to provide longer sentences to, and greater protection to the public from, habitual or "revolving door" criminals. <u>People v. Strong</u>, 87 Cal.App.4th 328, 331-332 (2001). A criminal defendant has the burden of convincing the trial court that the three strikes law should not be enforced against him because the nature and circumstances of the present offenses and prior convictions, and the particulars of his background, character, and prospects, take him "outside the spirit of that law." <u>People v. McGlothin</u>, 67 Cal.App. 4th 468, 473-474 (1998). The striking of a prior strike conviction is not to be done lightly; rather, it is an extraordinary exercise of judicial discretion comparable to the setting aside of a judgment of conviction after trial. <u>Id.</u> at p. 474. A California appellate court reviews a decision of the trial court to deny a <u>Romero</u> motion deferentially for abuse of discretion. <u>People v. Carmony</u>, 33 Cal. 4th 367, 375 (2004).

On appeal, Petitioner relied on <u>People v. Williams</u>, 17 Cal.4th 148, 161 (1998), which requires California courts considering whether to strike a prior conviction to consider, "in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions," whether the defendant "may be deemed outside the [three strikes] scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." Petitioner argued that because the trial court had

been mistaken about the number of prior felony convictions, he could not accurately consider

"the nature and circumstances" of Petitioner's prior convictions.  (LD 1, p. 19).

The 5th DCA rejected that argument as follows:

> The crux of Flores's claim is that the trial court's erroneous understanding of the number of prior convictions he had suffered made it impossible for the court to have given accurate consideration to his "prior serious and/or violent felony convictions."  Flores asserts that had the trial court known it would have to strike only one prior strike in order to sentence Flores as a two-strike offender, it would have been more likely to exercise its discretion under Romero.

> Even if we assume, arguendo, that the trial court held an erroneous belief that Flores had suffered three prior strike convictions, we are not persuaded that the error warrants remand for resentencing.  First, there is nothing at all in the record that even hints that trial court thought Flores was, in any way, outside the spirit of the three strikes law.  The court gave consideration to the only fact in Flores's favor, the fact that all the prior strikes were apparently the result of a single criminal adjudication, and found no basis for the exercise of its discretion.  It does not follow that a trial court, having stricken one allegation because it was not supported by the evidence, would be inclined more to consider a defendant outside the three strikes scheme.  Indeed, the court specifically made note that the violent nature of Flores's prior offenses, combined with the violent nature of the current offense, indicated he was a continuing threat to society and well within the spirit of three strikes.

> In addition, it is instructive to note that in Williams the court was dealing with a situation where the trial court had agreed to strike a prior strike conviction.  The Williams court concluded that where the trial court had exercised its discretion to strike a prior strike, but had failed to set forth its grounds in doing so, the reviewing court was duty bound to vacate the sentence and remand where the record did not show facts to support the conclusion the defendant was outside the three strikes scheme.  (Williams, supra, 17 Cal. 4th at pp. 163-164.)  This feature of Williams underscores the duty of an appellant who challenges the trial court's refusal to strike the allegation of a prior strike conviction to point *affirmatively* to facts in the record that demonstrate the appellant lies outside the spirit of three strikes.  Stated another way, it is not sufficient to show the trial court may have entertained an erroneous fact.  The appellant also must demonstrate that had the trial court decided to strike a prior strike in the interests of justice, there must be facts in the record that would justify that decision.

> Flores does not propose, nor can we discern, any valid reason he should not have been sentenced as a third striker.  The fact the trial court may have erred in believing he had been convicted of three prior strikes does not alter our conclusion that the trial court did not abuse its discretion in denying Flores's request to strike an additional allegation of a prior strike.

(LD 4, pp. 13-14).

The Court concludes that the 5th DCA's adjudication of this issue was neither contrary to

nor an unreasonable application of clearly established federal law.  Petitioner has failed to

demonstrate that the trial judge's decision not to dismiss either of the prior "strike" convictions

was arbitrary or irrational.  From the record before this Court, it is apparent that, as the 5th DCA

14

observed, the trial judge was not only aware of the severity of the sentence, but that he also realized that he could not merely strike the prior convictions simply because he might not agree with the length of the sentence.  See Romero, 13 Cal.4th at 531(quoting People v. Dent, 38 Cal.App.4th 1726, 1731 (1995) (a court fails to act "properly if 'guided solely by a personal antipathy for the effect that the three strikes law would have on [a] defendant, . . . .'")).

The 5th DCA concluded that, given Petitioner's extensive criminal record and his apparent inability to conform his behavior to societal norms, the trial court correctly rejected any contention that Petitioner was somehow "outside the scheme's spirit."   It is apparent to this Court that Petitioner is *precisely* the type of career recidivist criminal at whom California's Three Strikes sentencing scheme is directed.  The record before this Court also reflects that the trial court did in fact fairly consider Petitioner's request to strike and his attorney's arguments in support thereof.   Thus, Petitioner received the "individualized consideration" California requires.  See People v. Garcia, 20 Cal.4th 490, 500 (1999).

The Court agrees with the 5th DCA that "the violent nature of Flores's prior offenses, combined with the violent nature of the current offense, indicated he was a continuing threat to society and well within the spirit of three strikes."  (LD 4, p. 14).  The fact that only two prior violent felony convictions, rather than three, were actually attributable to Petitioner, does not, in any way, suggest that the trial court would have been more inclined to find Petitioner "outside the [three strikes] scheme's spirit," and thus might have dismissed a prior strike and sentenced Petitioner to a lesser term.

Moreover, the Court is unconvinced that the misstatement by the trial court reflected an actual misperception by the court as to how many prior strike convictions Petitioner had incurred. The trial court presided over Petitioner's admission of the two prior convictions at trial, during which proceedings the prosecutor withdrew the allegation of a prior strike for assault with a firearm because defense counsel pointed out that the conviction had been reversed on appeal. Accordingly, the trial court and counsel were, at least at the time of trial, well aware that Petitioner had only two prior strike convictions.

///

The Court will not speculate as to why, at the subsequent sentencing hearing, those same attorneys and trial judge referred to three prior strike convictions rather than two.  The Court recognizes that, in our criminal justice system, attorneys and judges are required to have command of an enormous volume of facts and information in each criminal prosecution.  On the whole, they handle that responsibility competently and accurately.  Occasionally, however, inadvertent  misstatements are made on the record.  That reality does not establish that either the judge or the attorneys did not realize that Petitioner's conviction for assault with a firearm had been reversed and stricken as a strike allegation.  However, as discussed above, even if it did signify such a mental lapse, nothing in the record indicates that the trial court would have changed its mind about denying the <u>Romero</u> motion had it "remembered" that only two prior strikes had been alleged instead of three.

Under all of these circumstances, Petitioner has failed to show the trial court's decision to be arbitrary or irrational or that the state court judgment was contrary to or an unreasonable application of clearly established federal law.  Hence, the claim must be denied.

**Ground Four**          **Whether, in the absence of proof of aggravating circumstances, gassing and battery are convictions that can support a "Three Strikes" sentence under the Eighth Amendment's prohibition against cruel and unusual punishment.**

Petitioner first contends that his sentence of 50 years-to-life violates the federal prohibition against cruel and unusual punishment contained in the Eighth Amendment to the United States Constitution because the substantive convictions, i.e., gassing and battery, were not serious felonies that involved aggravating factors such as use of a deadly weapon or great bodily injury.  (Doc. 1, p. 5).  This contention is without merit.

A.  <u>California's Three Strikes Law.</u>

Petitioner's contention that the substantive conviction that "triggers" California's three strikes law must be accompanied by proof of aggravating circumstances reflects Petitioner's complete misunderstanding of how the State of California's enhanced sentencing scheme operates.

///

16

"Under California three strikes law, <u>any</u> felony can constitute the third strike and thus can subject a defendant to a term of 25 years to life."  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 67, 123 S.Ct. 1166 (2003)(emphasis supplied); <u>Ewing v. California</u>, 538 U.S. 11, 16, 123 S.Ct. 1179 (2003); <u>see</u> Cal. Pen. Code § 667(e)(2)(A).  Petitioner cites no authority, and the Court is aware of none, that would require a third strike to include either serious bodily injury, possession or use of a deadly weapon, or some other aggravating factor in order to "trigger" the three strikes law. Accordingly, the state court's rejection of Petitioner's erroneous contention is neither contrary to nor an unreasonable application of clearly established federal law.

   B.  <u>The Three Strikes Law, As Applied To Petitioner, Does Not Violate The Eighth Amendment</u>.

   Notwithstanding the foregoing, however, the Court will also construe Petitioner's Ground Four as a challenge to his sentence based on the Eighth Amendment's prohibition against cruel and unusual punishment.  Considered as such, the contention fails.

   In the two companion cases mentioned in the previous section, <u>Lockyer v. Andrade</u>, 538 U.S. 63, and <u>Ewing v. California</u>, 538 U.S. 11, the Supreme Court provided guidance in applying Eighth Amendment jurisprudence to California's three strikes law in habeas cases.  In <u>Ewing</u>, the Supreme Court explained that while the constitutional principle of proportionality between crime and sentence applies to noncapital sentences, "[t]he Eighth Amendment does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime."  <u>Ewing</u>, 538 U.S. at 23 (citations omitted).  The gross disproportionality principle applies "only in the 'exceedingly rare' and 'extreme' case."  <u>Andrade</u>, 538 U.S. at 73 (citations omitted).

   Applying these standards, in <u>Ewing</u>, the Supreme Court rejected the defendant's claim that a sentence of 25 years-to-life for stealing nearly $1,200 worth of golf clubs was "grossly disproportionate" to his crime where the defendant had previously been convicted of three residential burglaries and a robbery.  <u>Ewing</u>, 538 U.S. at 18.  Similarly, in <u>Andrade</u> the Court reversed the Ninth Circuit's grant of habeas relief to a defendant sentenced to two consecutive 25 years-to-life sentences for two petty theft convictions for stealing five videotapes worth less than

$85, and four video tapes worth less than $70, respectively.

In Andrade, the Supreme Court concluded that the state court decision upholding the sentence was not "contrary to" the governing legal principles set forth in Supreme Court cases. Andrade, 538 U.S. at 73-74. The Supreme Court also held that the state appellate court did not "unreasonably appl[y]" the gross disproportionality principle to Andrade's case since that principle "gives legislatures broad discretion to fashion a sentence that fits within the scope of the proportionality principle–the 'precise contours' of which 'are unclear.'" Id., 538 U.S. at 75-77. According to the Supreme Court, "it was not objectively unreasonable for the California Court of Appeal to conclude that these 'contours' permitted an affirmance of Andrade's sentence." Id.   In addition to Andrade and Ewing, the Supreme Court has also upheld a life sentence under Texas's habitual offender statute for obtaining $120 by false pretenses, Rummel v. Estelle, 445 U.S. 263, 100 S.Ct. 1133 (1980), and a life sentence *without the possibility of parole* for possession of cocaine.  Harmelin v. Michigan, 501 U.S. 957. 111 S.Ct. 2680 (1991).

In 2004, the Ninth Circuit held that a three strikes sentence of 25 years-to-life for a third offense of shoplifting a $199 VCR was cruel and unusual punishment.  Ramirez v. Castro, 365 F.3d 755 (9th Cir. 2004).  The Ramirez petitioner's criminal history consisted of two convictions for second-degree robbery as a result of a single guilty plea entered before the three strikes law was enacted.  In that case, the prosecution used two 1991 shoplifting convictions to charge the petitioner in 1995 with one count of petty theft with a prior theft-related conviction. (Cal. Pen. Code § 666).  The jury found the two 1991 shoplifting convictions were strikes, the trial court refused to strike either of them, and sentenced the petitioner to 25 years-to-life. Ramirez v. Castro, 365 F.3d at 756.

Prior to his third-strike sentence, the petitioner had never been sentenced to prison, and had been incarcerated only one time in the county jail. In finding the sentence unconstitutional, the Ninth Circuit determined that the state court unreasonably applied the gross proportionality principle to the "unique facts of Ramirez's case." Id. at 774.

By contrast, in another 2004 case, the Ninth Circuit held that a three strikes sentence of 25 years-to-life for a third "wobbler" offense did not constitute cruel and unusual punishment,

because the petitioner had a lengthy criminal history, had been incarcerated several times, and the strikes used to enhance the petitioner's sentence involved the threat of violence. Rios v. Garcia, 390 F.3d 1082, 1086 (9th Cir. 2004).

In light of this jurisprudence, the Court concludes that Petitioner's sentence here is not grossly disproportionate to the offense and therefore the sentence imposed in this case and affirmed by the state courts did not violate the Eighth Amendment. The Court also notes that Petitioner's argument impliedly seeks to minimize the gravity of his crimes, i.e., aggravated gassing and battery of prison employees. Contrary to Petitioner's implicit assumption, however, attacks, either through throwing bodily fluids or physically assaulting prison employees are not insignificant or harmless crimes, but ones which implicate the safe administration of the state prisons, as well as the welfare of the employees and other inmates.

In Andrade, the U.S. Supreme Court upheld two consecutive 25 years-to-life sentences for stealing videotapes valued at less than $200, after prior convictions on two counts of petty theft. Here, Petitioner received two consecutive 25 years-to-life sentences for throwing bodily fluids into the face and eyes of a prison nurse and kicking a female prison guard, crimes clearly more serious in nature than the petty theft conviction at issue in Andrade. As in Andrade, Petitioner was no first-time offender, and his sentence does not preclude parole.[1]

Beyond the instant offense, however, the Court must consider Petitioner's prior history, which is more extensive than in Ramirez, as well as his lengthy prison incarcerations and periods of probation that span most of his adult life in this country. As the Supreme Court stated in Ewing, "[i]n weighing the gravity of Ewing's offense, we must place on the scales not only his current felony, but also his long history of felony recidivism." Ewing, 538 U.S. at 29.

Based on the record now before this Court, Petitioner pleaded guilty to two prior strike convictions resulting from two 1996 convictions for assault with a semiautomatic weapon. (CT 76; RT 124). Additionally, the 5th DCA noted that Petitioner's criminal history, which began

---

[1] California Penal Code § 3041 provides that parole must be granted unless certain criteria, not present in this case, are met. § 3041 further provides that the California Board of Prison Terms must grant parole unless it determines that public safety requires a lengthier period of incarceration for the individual because of the gravity of the offense underlying the conviction. In re Rosenkrantz, 29 Cal. 4th 616, 654 (2002).

shortly after his immigration to the United States from Guatemala in 1993, involved a sentence of three year's probation for transportation of narcotics.  (LD 4, p. 18).  Shortly thereafter, in 1996, Petitioner was convicted of the offenses giving rise to his two prior "strikes."  (Id.).  The offense for which Petitioner was most recently convicted, i.e., aggravated gassing and battery, were committed while Petitioner was serving his prison term on the 1996 convictions.  (Id.).  In other words, during the fifteen years in which Petitioner has been in the United States, he has spent virtually no time crime-free and virtually all of his time incarcerated in state prison. Moreover, as mentioned, the crimes constituting the strikes and his present offenses all involve violent behavior, in contrast to the situation in Andrade.

.       Given Petitioner's extensive criminal history, spanning the entire period of his residence in this country, his case is not "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross proportionality."  Harmelin, 501 U.S. at 1005.  Given the Supreme Court's upholding in Andrade of the same sentence that Petitioner received here, the Court agrees with the 5th DCA that it "can discern no grounds upon which [Petitioner], having received his concurrent 25-years-to-life sentences for violent felonies, can make any valid claim his punishment is cruel or unusual." (LD 4, p. 21).  As was true in Ewing, Petitioner's sentence of 25 years-to-life is justified by the State's public-safety interest in incapacitating and deterring recidivist felons, and is amply supported by Petitioner's prior convictions documenting his unstinting disregard for the law.  Ewing, 538 U.S. at 29-30.

In sum, Petitioner's sentence, when compared with his underlying offenses, does not violate the Eighth Amendment's prohibition on cruel and unusual punishment.  Based on the foregoing, the Court concludes that the state court's rejection of Petitioner's claim was neither contrary to nor an unreasonable application of clearly established United States Supreme Court precedent. Accordingly, this claim must be denied.

**Ground Five**              **Whether Petitioner was deprived of his right to the effective assistance of appellate counsel.**

_____Petitioner finally contends that his constitutional right to the effective assistance of appellate counsel was violated.  This contention, too, lacks merit.

**A.  The Standard For Ineffective Assistance of Counsel**.

In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the Court must consider two factors.  Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.  Strickland, 466 U.S. at 687.  To establish this, the petitioner must show that counsel's representation fell below an objective standard of reasonableness.  Id. at 688.  The petitioner must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances.  Id.; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential, and a court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Strickland, 466 U.S. at 687; Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994).

Second, a petitioner must show prejudice, i.e., whether counsel's errors were so egregious as to deprive him of a fair trial, one whose result is reliable.  Strickland, 466 U.S. at 688, 694. To establish prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.; Williams v. Taylor, 529 U.S. at 391.   In so doing, the Court must also evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness.  Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1456, 1461 (9th Cir. 1994).

The Court does not need to consider the two elements in any particular order, nor does the Court need to consider both if the showing on either one is insufficient.  Strickland, 466 U.S. at 697.  A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.  Id.   The object of an ineffectiveness claim is not to grade counsel's performance.  Id.  "If it is easier to dispose of an ineffective claim on the ground of lack of sufficient prejudice, which we expect

will often be so, that course should be followed." Id.

In challenges to the effective assistance of appellate counsel, the same standards apply as with the claims of ineffective assistance of trial counsel. Smith v. Robbins, 528 U.S. 259, 285, 120 S.Ct. 746 (2000); Smith v. Murray, 477 U.S. 527, 106 S.Ct. 2661 (1986). In Smith, the United States Supreme Court indicated that an appellate attorney filing a merits brief need not and should not raise every non-frivolous claim. Robbins, 528 U.S. at 288. Rather, an attorney may select from among them in order to maximize the likelihood of success on appeal. Id. As a result, there is no requirement that an appellate attorney raise issues that are clearly untenable. Gustave v. United States, 627 F.2d 901, 906 (9th Cir. 1980).

### B. Petitioner Was Not Denied the Effective Assistance of Counsel.

With these principles in mind, the Court now turns to an analysis of Petitioner's claims of ineffective assistance of appellate counsel. Petitioner contends that appellate counsel's performance was deficient in the following ways: (1) appellate counsel failed to raise in the California Supreme Court petition for review the issues raised in this petition in Grounds One and Two; (2) appellate counsel failed to "discover that the underlying conviction doesn't trigger the three strike sentence" and failed to raise that claim on appeal; and (3) appellate counsel failed to argue Ground Four as a federal claim, thus prejudicing Petitioner. (Doc. 12, p. 6). None of these claims of ineffective assistance have merit.

First, as mentioned, appellate counsel is not obligated to raise every possible claim; rather, he or she is obligated only to effectively represent the petitioner. As such, counsel may have to make strategic choices regarding which claims to raise and which to ignore. The fact that appellate counsel did not raise Grounds One and Two in the California Supreme Court and that Petitioner had to exhaust them himself in order to include them in the amended petition does not, ipso facto, establish ineffective representation. As discussed previously, Ground One is moot because it was reversed by the 5th DCA, and the Court has rejected Ground Two as lacking merit. Petitioner has provided no evidence to support a conclusion that appellate counsel was ineffective in failing to exhaust these issues in state court.

///

Moreover, even if appellate counsel was ineffective in failing to raise the issues, the fact that Petitioner himself was able to exhaust the issues and raise them in the amended petition precludes any finding of prejudice under Strickland.  Accordingly, there can be no constitutional violation regarding appellate counsel's failure to raise these issues.

As to counsel's failure to "discover" and argue that the three strikes law does not apply to the underlying convictions of gassing and battery, as previously discussed, such a view reflects Petitioner's total misunderstanding of California's three strikes law and must be rejected. Accordingly, appellate counsel's performance in ignoring such an erroneous and misguided argument cannot be deficient.

Regarding counsel's failure to "federalize" Ground Four, even assuming, without finding, that counsel should have argued that claim in a federal context, there is no prejudice because Petitioner exhausted the claim and the Court has addressed it on its merits.

Finally, even were the Court to conclude that appellate counsel's performance was deficient in one or more of these instances, given that the issues raised in the amended petition are completely without merit, the Court concludes that any deficient performance attributable to appellate counsel was harmless because, given the lack of merit in these issues, any error in counsel's performance would not have "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. at 623.

Accordingly, the state court's adjudication of this issue is neither contrary to nor an unreasonable application of clearly established federal law.  Hence, Ground Five must be denied.

## ORDER

Accordingly, for the reasons set forth above, the petition for writ of habeas corpus (Doc. 12), is DENIED, with prejudice.

The Clerk of Court is DIRECTED to enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

Dated:   **March 7, 2008**                                        **/s/ Theresa A. Goldner**
                                                                    UNITED STATES MAGISTRATE JUDGE